IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-00673-SKC

REGIONAL LOCAL UNION NOS. 846 AND 847, *International Associations of Bridge Structural, Ornamental and Reinforcing Iron Workers, AFLC-CIO,*
REGIONAL DISTRICT COUNCIL WELFARE PLAN AND TRUST, *by and through its Board of Trustees, f/k/a Local 846 Rebar Welfare Trust,*
REGIONAL DISTRICT COUNCIL RETIREMENT PLAN AND TRUST, *by and through its Board of Trustees, f/k/a Rebar Retirement Plan and Trust,*
REGIONAL DISTRICT COUNCIL TRAINING TRUST, *by and through its Board of Trustees, f/k/a Local 846 Training Trust,* and
REGIONAL DISTRICT COUNCIL VACATION TRUST FUND, *by and through its Board of Trustees, f/k/a Local 846 Vacation Trust,*

       Plaintiffs,

v.

MILE HIGH RODBUSTERS, INC., *a Colorado corporation,*
THE REINFORCING COMPANY, INC., *a Colorado corporation,*
KRISTINE GARCIA, and
BRANDON GARCIA,

       Defendants.

## ORDER RE: DEFENDANTS' MOTION TO DISMISS [#17]

This Order addresses Defendants' Motion to Dismiss (the "Motion"). [#17.][1] The Court has reviewed the Motion and the related briefing. No hearing is necessary. For the reasons stated herein, the Court GRANTS the Motion in part and DENIES the Motion in part.

---

[1] The Court uses "[#__]" to refer to entries in the CM/ECF Court filing system.

## A. BACKGROUND[2]

This is an action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs seek to collect unpaid fringe benefit contributions and other amounts owed by Defendants. [#1, ¶1.]

Plaintiffs include a group of ERISA funds (the "Funds") established by Local Union Nos. 846 and 847 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers in Colorado (collectively, "Unions"). [*Id.* p.2-3.] In January 2011, Defendant Mile High Rodbusters, Inc. ("MHR"), signed a collective bargaining agreement (the "CBA") with the Unions. [*Id.* ¶17.] Defendant Brandon Garcia was the president and sole owner of MHR. [*Id.* ¶16.] The CBA required MHR to submit fringe benefit contributions to the Funds and dues to the Unions based on the number and types of hours union employees worked. [*Id.* ¶¶22,27.] MHR complied with the CBA's contribution and union dues requirements for a time, but eventually stopped. [*Id.* ¶29.]

### 1. The Prior Case

In January 2013, Plaintiffs (some or all of them)[3] filed suit in federal court against MHR to reclaim fringe benefit contributions due under the CBA, as well as

---

[2] The Court accepts the following well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010).
[3] The prior case had seven named plaintiffs, while this case has five. Only three plaintiffs are obviously common between the two cases: (1) Local Union No. 847, (2)

2

payment for delinquent dues owed Local Union No. 847 from MHR. *See generally Regional District Council, et al v. Mile High Rodbusters, Inc., et al.*, No. 1:13-cv-00214-REB-KLM (D. Colo. Jan. 28, 2013) ("2013 Lawsuit") at #1, ¶¶24,30-31. MHR failed to answer or otherwise respond to the complaint in the 2013 Lawsuit, and Plaintiffs moved for entry of default. [2013 Lawsuit at #39.] The Clerk of Court entered default against MHR, and Plaintiffs subsequently moved for partial default judgment ("Motion for Partial Default"). [2013 Lawsuit at #42.]

In their Motion for Partial Default, Plaintiffs requested "unpaid contributions for the period of January 2012 through June 2014," and "an order compelling Defendant MHR to submit to an audit for the period of January 1, 2013 to the present." [*Id.* at ¶¶6,8.] Magistrate Judge Kristine Mix recommend Plaintiffs' Motion for Partial Default be granted in part and denied in part. Specifically, Judge Mix recommended an award of damages to Plaintiffs under Count I for unpaid contributions through December 2012 totaling $79,079.87.[4] [*Id.* at #44, p.10.] Judge Mix recommended dismissing Count II, which sought payment of unpaid union dues, because Plaintiffs failed to timely file a motion requesting default judgment as to

---

Regional District Council Vacation Trust Fund, and (3) Regional District Council Training Trust. No party has explained the relationship between the plaintiffs in each case with similar, but different names. Therefore, the Court's references to "Plaintiffs" herein refer only to the three plaintiffs common to both cases.

[4] The amount awarded consisted of (1) unpaid contributions for 2012 in the amount of $34,845.89, (2) interest on unpaid contributions in the amount of $14,686.52, (3) additional interest in the amount of $14,686.52, (4) reasonable attorney fees in the amount of $14,378.43, and (5) costs in the amount of $482.51. [2013 Lawsuit at #44, p.15.]

3

Count II. [*Id*. at pp.15-16.] Judge Mix also recommended denying Plaintiffs' request for MHR to submit to an audit. [*Id*. at p.15.] Pursuant to Fed. R. Civ. P. 72, the parties had fourteen days to file written objections to Judge Mix's recommendation, but no party did. District Judge Blackburn subsequently adopted Judge Mix's recommendation, resulting in a final judgment against MHR on March 9, 2015 ("2015 Judgment"). [*Id*. at #45.]

In March and April 2015, Plaintiffs served writs of garnishment on third parties in their efforts to collect on the 2015 Judgment. [*Id*. at #53,54.] Those collection attempts were apparently unsuccessful because in December 2018, Plaintiffs served a Fed. R. Civ. P. 45 subpoena on The Reinforcing Company, Inc. ("TRC"), seeking various documents and a Rule 30(b)(6) deposition. [*Id*. at #59, p.1.] TRC moved to quash the subpoena, arguing:

> [1] The [S]ubpoena and document request is not relevant to the case at hand which involves a request for documents from an entirely unrelated entity. [2] The [S]ubpoena on its face shows no need for the documents since [TRC] was formed after the judgment against Defendant was entered[.] [3] The time covered in the [S]ubpoena request has nothing to do with the time the Defendant operated. [4] The burden of gathering the records over the period from 2016 to 2018 in the depth that the request is made imposes an undue burden due to its lack of relevance to the time period the Defendant operated in.

[*Id*. at #57, p.3-4.] Judge Mix denied TRC's motion finding the information sought by the subpoena was relevant to determining whether TRC was MHR's alter ego, and TRC failed to demonstrate undue burden. [*Id*. at #60, p.9.]

**2.    This Case**

4

Unable to collect on the 2015 Judgment against MHR, Plaintiffs brought the present lawsuit on March 11, 2020, seeking (in relevant part) a declaration that TRC is an alter ego of MHR and thus liable for the 2015 Judgment. [#1, pp.9-10.] The Complaint also alleges MHR had a continuing obligation to make contributions under the CBA, and therefore, Plaintiffs seek a judgment against MHR for unpaid dues and contributions not encompassed by the 2015 Judgment. [*Id*. ¶43.] Plaintiffs also bring claims against Kristine Garcia and her husband, Brandon Garcia, claiming they are alter egos of TRC. [*Id*. pp.10-14.] Plaintiffs seek to hold the Garcias liable for the 2015 Judgment against MHR. [*Id*.]

Defendants filed the present Motion arguing the Court should dismiss Count I under the theories of *res judicata*, collateral estoppel, or laches. [#17, pp.4-9.] They also urge the Court to dismiss the alter ego claims against TRC and the Garcias (Counts II-IV) for failure to state a claim. [*Id*. pp.9-15.]

### B. STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly-Iqbal* pleading standard requires that courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are

mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id.* If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1252 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## C. DISCUSSION

### 1. Defendants' Purported Lack of Candor to the Court

6

As an initial matter, the Court takes issue with Defendants' briefing. Specifically, Defendants argue the doctrine of *res judicata* bars Plaintiffs' claims for contributions and an accounting because that relief was "denied and dismissed [in the 2013 Lawsuit] because Plaintiffs failed to timely file a request for a default judgment." [#17, p.5.] This is an inaccurate statement of the record. As Plaintiffs point out in their response, the reference to a failure to timely file for default judgment by Judge Mix concerned Plaintiffs' claims for union dues only.

Significantly more concerning, however, is Defendants' addition of language to Judge Mix's recommendation to bolster their arguments. Specifically, Judge Mix's recommendation reads:

> Finally, the Court ordered Plaintiffs to request default judgment on their claims no later than July 29, 2014. Minute Order [#41]. Plaintiffs were warned that failure to do so could result in dismissal. Plaintiffs failed to timely file a motion requesting default judgment as to Count II of the Complaint.

[2013 Lawsuit at #44, pp.15-16]. However, Defendants' Motion adds the italicized language, below, which does not appear in Judge Mix's recommendation:

> Finally, the Court ordered Plaintiffs to request default judgment on their claims no later than July 29, 2014. Minute Order [#41]. Plaintiffs were warned that failure to do so *or must be one that could and should have been raised in the first suit* could result in dismissal. Plaintiffs failed to timely file a motion requesting default judgment as to Count II of the Complaint.

[#17, p.5.] (emphasis of, "or must be," added; the remaining emphasis is in the original). Defendants even gave these added words emphasis by italicizing them. They did not place these added words in brackets or otherwise indicate they were

7

adding words that do not appear in Judge Mix's original and actual recommendation. Defendants effectively put words in Judge Mix's mouth, represented to this Court that those words were a direct quote from Judge Mix, and then relied on the false verbiage in support of their Motion.

Colorado attorneys have an ethical obligation of candor toward the Court. Colo. R.P.C. 3.3(a). That obligation prescribes that a lawyer shall not knowingly make a false statement of material fact or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. *Id*. Because Defendants' Motion contains many typographical errors, incomplete sentences, and other drafting ills, it is difficult to determine whether their false quotation was a deliberate or careless act. But the Court will afford defense counsel the benefit of the doubt on this one and only occasion. Defense counsel is warned, however, that any future instances demonstrating a lack of candor toward the Court may result in sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (The Court has "the ability to fashion an appropriate sanction for conduct which abuses the judicial process.")

2.   **Count I**

In Count I, Plaintiffs bring a claim against MHR for unpaid contributions under the CBA that were due "subsequent to the delinquent periods covered by the March 29, 2015 judgment." [#1 ¶43.] The Court finds the doctrine of *res judicata* bars this claim.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted). *Res judicata* (or claim preclusion) "precludes the parties or their privies from relitigating issues that were *or could have been raised* in the prior action." *Wilkes v. Wyo. Dept. of Emp't Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) (internal quotation marks and citation omitted) (emphasis added). Claim preclusion requires four elements be satisfied: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; (3) identity of the cause of action in both suits; and (4) a full and fair opportunity to litigate the claim in the prior suit. *Johnson v. Dep't of Veterans Affairs*, 611 F. App'x 496, 497 (10th Cir. 2015).

### i. Claim Preclusion Elements One, Two, and Four

In terms of the first element, the 2015 Judgment satisfies the first element of a judgment on the merits in the earlier action (the 2013 Lawsuit) for purpose of claim preclusion. *See, e.g., In re Corey*, 394 B.R. 519, 526 (B.A.P. 10th Cir. 2008) ("Corey is correct in arguing that, in general, default judgments entered by federal courts are not given collateral estoppel effect (although they are given *res judicata*, or claim preclusive, effect) . . . ."), aff'd, 583 F.3d 1249 (10th Cir. 2009); *see also Riehle v. Margolies*, 279 U.S. 218, 225 (1929) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata*, in the absence of fraud or collusion, even if obtained by default.").

The second element—privity of parties—is also satisfied. As noted, *supra*, in footnote three, Plaintiffs and MHR were parties to both lawsuits. Moreover, the claims in both cases arise (or arose) under the same CBA. Because there is "a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same," the Court finds the second element is also met. *Pelt v. Utah*, 539 F.3d 1271, 1281 (10th Cir. 2008) (quoting *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir.1989) (internal quotations omitted)).

The fourth element is also satisfied because the parties had a full and fair opportunity to litigate Plaintiffs' claim to unpaid contributions under the CBA in the 2013 Lawsuit. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1174 (10th Cir. 2004) (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 689 (10th Cir. 1992)) (The fourth element focuses "on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.")

### ii. Third Element of Claim Preclusion

The Parties' arguments focus on the third element—identity of the cause of action in both suits. The Tenth Circuit follows the transactional approach of the Restatement (Second) of Judgments to examine the identity of the causes of action in both lawsuits for claim preclusion purposes. *Petromanagement Corp. v. Acme-Thomas*

*Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988). The transactional approach provides that a final judgment extinguishes:

> all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose . . . What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit.

*Id.* (quoting Restatement (Second) of Judgments § 24). "Under [the transactional] approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation." *Wilkes*, 314 F.3d at 505 (quoting *Nwosun v. General Mills Rest., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997)). In employment cases, for example, the Tenth Circuit "repeatedly has held that all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes." *Haynes v. Kansas*, 261 F. App'x 87, 89 (10th Cir. 2008) (citing *Wilkes*, 314 F.3d at 504).

Here, Plaintiffs argue *res judicata* does not bar subsequent claims arising out of events that occurred after the filing of the original complaint. [#18, p.7.] In support of their argument, they cite *Mitchell v. City of Moore, Oklahoma*. 218 F.3d 1190, 1202-3 (10th Cir. 2000). In *Mitchell*, the plaintiff police captain sued the city and three city officials claiming several adverse employment actions created various federal and

11

state causes of action. *Id*. at 1194. While the suit was pending before the district court, plaintiff's employment was terminated, and the union forced the city to arbitrate the termination claim. *Id*. at 1196. After receiving a favorable ruling on its summary judgment motion in district court, the city moved to enjoin the arbitration on the grounds of *res judicata*. *Id*. at 1197. The court held that judgment for the city in the civil rights suit did not bar arbitration over plaintiff's later termination. *Id*. at 1203. Plaintiffs focus on the court's statement that it agreed with other circuits holding that claim preclusion does not bar the litigation of claims based on conduct occurring after a complaint is filed. *Id*. at 1202. But the *Mitchell* court did not base its decision on those grounds. It instead based its decision on finding the second element—identity of the parties—was not satisfied. *Id*. at 1203. ("Regardless of the outcome of the third inquiry, however, we affirm the district court because the second prong – identity of the parties – is not met.)

Plaintiffs also argue that *res judicata* does not bar subsequent lawsuits to enforce a continuing obligation. [#18, p.8.] But they cite no cases from the Tenth Circuit in support of their argument. And the cases they do cite from other circuits are distinguishable. *See Dietrich v. Stephens*, 252 F. App'x 12, 14 (6th Cir. 2007) ("Dietrich's federal court claims arise from a set of facts that were not yet in existence at the time of the state court settlement—namely, MTG's post-settlement defaults."); *Pelotto v. L&N Towing Co.*, 604 F.2d 396, 401 (5th Cir. 1979) (*res judicata* did not

12

apply to seaman's suit for maintenance and cure based on the peculiarity of those remedies in admiralty cases).

Here, there is no dispute Plaintiffs' claims arise out of the same set of facts and same transaction(s) as the 2013 Lawsuit, namely MHR's repudiation of its payment obligations under the CBA. Plaintiffs argue they only seek damages and an audit for the time periods subsequent to the delinquent periods covered by the 2015 Judgment. But Plaintiffs could have brought claims to encompass that period in the 2013 Lawsuit since their claims all arise out of the same breach of the CBA by MHR. Indeed, Plaintiffs' Motion for Partial Default in the 2013 Lawsuit sought the very same unpaid contributions and the very same audit Plaintiffs seek in this case. [2013 Lawsuit at #42-1, pp. 6,7-8.] Judge Mix previously recommend denying both of those remedies; the former because "the complaint did not contain allegations of continuous or ongoing relief through the date of any judgment," and the latter because the complaint "contained no demand for an audit."[5] [2013 Lawsuit at #44, pp. 10,15.] Plaintiffs could have sought leave to amend their complaint in the 2013 Lawsuit to address these points, but they did not. They also could have filed objections to Judge Mix's recommendation, but they did not do that either.

---

[5] Plaintiff's' argument that claim preclusion does not bar its claim for an audit because "the failure to seek or obtain injunctive relief in the initial suit does not bar a plaintiff from filing suit for subsequent unlawful conduct" is unavailing. [#18, p.8.] There is no alleged *subsequent* unlawful conduct. The alleged unlawful conduct remains MHR's breach of the CBA which Plaintiffs sued upon, and sought remedies for, in the 2013 Lawsuit.

13

Plaintiffs failed to bring all possible claims and request all possible remedies in the 2013 Lawsuit for MHR's breach of the CBA; they cannot now file a new lawsuit to remedy past pleading mistakes. *See Stone v. Dep't of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) ("One major function of claim preclusion . . . is to force a *plaintiff* to explore all the facts, develop all the theories, and demand all the remedies in the first suit.") (emphasis in original; quoting 18 *Federal Practice and Procedure* § 4408). Accordingly, the Court concludes the third element has been met, and claim preclusion applies to Count I.[6]

## II. Counts II-IV

These claims allege TRC (Count II) and the Garcias (Counts III and IV, respectively) are the alter egos of MHR, and therefore, are liable for the 2015 Judgment. The doctrine of *res judicata* does not bar a plaintiff who has successfully sued an obligor from maintaining an action against a co-obligor. *See United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) ("[a] judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor.") (citations omitted). This is because "the claim against others who are liable for the same harm is regarded as separate." *Id.* Thus,

---

[6] Since Count I is claim precluded the Court does not reach Defendants' other arguments for dismissal.

the alter ego claims are not claim precluded.[7] The Court, therefore, considers whether the Complaint plausibly alleges these claims.

The corporate structure is an artificial construct of the law to incentivize investment by limiting personal liability. *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051–52 (10th Cir. 1993) "The insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception." *Id.* (citing *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 402-03 (1960)) (citations omitted).

In extreme circumstances, however, the corporate form will be disregarded, and the personal assets of a controlling shareholder or shareholders may be attached in order to satisfy the debts and liabilities of the corporation. *Id*. But the corporate veil should be pierced only reluctantly and cautiously. *Id*. (citing *Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557, 1576 (10th Cir. 1990), *cert. denied,* 498 U.S. 849 (1990). Piercing the corporate veil is an equitable action and as such is reserved for situations where some impropriety or injustice is evident. *Id*.

> If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.... The corporate veil may not be pierced absent a showing of improper conduct.

---

[7] To the extent the alter ego claims seek damages for the period not covered by the 2015 Judgment, and an audit, those aspects are claim precluded for the reasons already discussed.

*Id.* (citing Charles R.P. Keating & Gail O'Gradney, Fletcher Cyclopedia Corporations, § 41 at 603 (1990 ed.)). Under federal common law, "the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy." *United States v. Van Diviner*, 822 F.2d 960, 964 (10th Cir. 1987). Although actual fraud is not generally regarded as a prerequisite for piercing the corporate veil, the plaintiff bears the burden of demonstrating that some injustice or inequity will result from recognition of the corporate entity. *Id.*

Courts consider a variety of factors when determining whether the corporate form should be disregarded: (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality, or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses. *Id.; see also N.L.R.B. v. Tricor Prod., Inc.*, 636 F.2d 266, 270 (10th Cir. 1980).

i.  **TRC**

The Complaint contains sufficient factual allegations to plausibly allege TRC is the alter ego of MHR. Plaintiffs allege TRC was incorporated in September 2013, shortly before MHR ceased doing business. [#1, ¶33.] TRC performs the same work

MHR previously performed. [*Id.* ¶34.] TRC employs or has employed several key managerial employees from MHR, including MHR's prior owner Brandon Garcia. [*Id.* ¶36.] The Complaint alleges these managerial employees perform the same work functions as they did when working for MHR. [*Id.* ¶37.] The Complaint also alleges TRC works for the same contractors as MHR did, and utilizes the same bank, insurance providers, and suppliers as MHR. [*Id.* ¶¶39,40.] Finally, Plaintiffs allege TRC's corporate form was used to perpetrate a fraud against them as a judgment creditor of MHR. [*Id.* ¶48.]

In response, Defendants argue the Complaint fails to allege antiunion sentiment, citing the Tenth Circuit's opinion in *Tricor Prod.*, *supra*. But *Tricor Prod.* merely guides that antiunion sentiment is one factor among the other numerous factors to consider. *Tricor Prod.*, 636 F.2d at 270 ("[A] determination as to whether a second employer is a mere successor to a first employer, or is its alter ego, involves a consideration of numerous factors. There is no hard-and-fast rule. If an employer makes changes in its business operation to deliberately get rid of the union, the employer is more likely to be an alter ego. If, however, the employer has legitimate economic reasons for the changes, and is not motivated by anti-union sentiment, the second employer is more likely to be deemed a mere successor to the first."); *see also Goodman Piping Prods. Inc., v. N.L.R.B.*, 741 F.2d 10, 12 (2d. Cir. 1984) (discussing positions of various circuits and finding Tenth Circuit case law indicates antiunion sentiment may be germane to the analysis but it is not required).

The Court finds the Complaint plausibly alleges an alter ego claim against TRC.

**ii.     The Garcias**

The Court also concludes Plaintiffs have plausibly alleged alter ego claims against the Garcias. Regarding Kristine Garcia, Plaintiffs allege she has no experience in the construction industry, and yet, is the sole owner of TRC and she incorporated TRC shortly before MHR ceased doing business. [#1, ¶¶10, 33, 35.] The Complaint further alleges Mrs. Garcia has disregarded the corporate form by using TRC's assets to make personal purchases including holiday costumes, gym memberships, makeup, music lessons, expensive purses, and vacations. [*Id*. ¶41.] And finally, it alleges Mrs. Garcia formed TRC to evade the responsibilities imposed by the CBA to which MHR is signatory. The Court finds the Complaint plausibly alleges an alter ego claim against Mrs. Garcia.

Regarding Brandon Garcia, the Complaint alleges he was the sole owner and president of MHR and now works as TRC's general manager, he has disregarded the corporate form by using TRC's assets to make personal purchases, he controls TRC's operations, and he operates TRC to evade the responsibilities imposed by the CBA to which MHR is signatory. [*Id*. ¶¶10, 16, 41, 66.] The Court finds these allegations sufficient to plausibly allege an alter ego claim against Mr. Garcia.

Defendants argue Plaintiffs failed to allege how the Garcias accounted for their personal purchases in their tax forms. But factual allegations regarding tax

18

treatment of alleged personal purchases is not required to plausibly allege an alter ego claim.

* * *

Defendant's Motion is GRANTED IN PART and DENIED IN PART. IT IS ORDERED, Defendants' Motion is GRANTED as to Count I and DENIED as to Counts II, III, and IV. Count I is dismissed, with prejudice.

IT IS FURTHER ORDERED that the four-day trial set to begin May 17, 2021, is hereby VACATED. Within three days of the date of this Order, the parties shall jointly contact Chambers by email to schedule a status conference to discuss re-setting the trial or other needs of the case.

DATED: May 7, 2021.

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge